Next case for argument is In Re Enterprise Rent-A-Car Wage&Hour Employment Practices Litigation In BFI, our court said that the ultimate question was a factual one. How do you reconcile your answer with what we said in BFI? Well, Your Honor, I think that if you look at Brown v. Ferris, what's happening there is the application of law to fact, and that's clearly what we have here as well. There are factual findings to be made. The district court made those findings and determined that all of the facts that were material pointed in our favor, and that those that were disputed were not sufficient to affect the application of the legal test. Your Honors, let me just speak then to the remaining elements of that test under Brown v. Ferris, and that is who has the authority to hire and fire. Again, that is undisputed that it was only the subsidiaries. Should we consider the fact that your corporate officers have sole control, really, of every single one of the subsidiaries? Your Honor, that's an ordinary incident of the wholly-owned parent-subsidiary relationship. That would be true of thousands of employers throughout the country. The fact that we're looking at an integrated employer case, and there's a separate four-factor test there, that's not a test being advanced before this Court for this particular case. Here, I think even in the reply brief, the plaintiffs make clear that they are not arguing that by virtue of their service as officers and directors of the subs, they somehow control, the parent somehow controls the subsidiary, because that's clearly rejected in the case law. And I think what is really dispositive or relevant rather here, Your Honor, if you were going to consider the corporate relationship, is not the existence of authority, but whether it's exercised. And I think the Eleventh Circuit's decisions in Patel and Alvarez-Perez are particularly instructive there. And that is, does the parent step beyond the normal parent-subsidiary relationship in order to control the employment of the alleged jointly-employed employees? So it's not just any employees of the sub. So you are saying that formal authority should not count, only actual authority or exercise of authority should count? Yes, and particularly in the parent sub-context, Your Honor, because the only way that the parent officers have formal authority is by virtue of their service as directors of the subsidiaries. This Court and many courts, including the Supreme Court, have recognized that the dual-hats doctrine makes it clear that's not an act of the parent. They can and do serve in both capacities. And in this case, you can see that application because the testimony is uniform that even in their capacity as directors of the subsidiary, never once did the officers of the parent intervene in any significant aspect of the employment of assistant branch managers. All the general managers testify consistently to that. And again, when you take a step back and you say, well, we're looking at the reality of the situation, who exerted substantial control, that's clearly the case because they're paying the general managers who are several steps above. The Court has told us several times in several contexts, but contexts involving employment, that we're to look to economic reality, not simply technical concepts. That's correct, Your Honor. Isn't your position at odds with that? Aren't you asking us to look at only one and not the other? No, I think quite to the contrary, Your Honor. My position is that the reality of the employment relationship should govern. So whether or not there is theoretical power in their dual capacity as subsidiary directors is irrelevant to the economic reality of the situation. Is the parent making employment decisions that exert significant control over assistant managers? The reality of the answer to that question is clearly no, it's not. The general managers who are several levels above the assistant managers have full and complete authority and delegate that even to their subordinates. Every plaintiff testified consistently, as Judge Conte noted, that no one from St. Louis had anything to do with any aspect of their employment. For them to come in now and say that the reality of the situation was that the St. Louis parent corporation somehow exerted significant control over their employment is completely at odds with the record that's before the District Court and before this Court. That's an application of the economic reality test, Your Honor. It's not formalistic. It's what is happening in the real world. What is happening in the real world is the subsidiaries hire, they fire, they set the work hours, they decide where you're going to work, they tell you what the duties to be performed are, they make every single significant decision. Even if you look in Judge Conte's findings of fact, although she indicates that there are a number of issues related to compensation that are in dispute, the only thing she's really finding in dispute is that 2005 recommendation. Because if you go earlier to page 14 and 15 of her decision, she finds clearly that compensation is determined by the general manager. They can vary from the guide and do without permission. She finds that job descriptions are not mandatory, that general manager Nettles from Pittsburgh doesn't even use the recommended job description. All of those things are controlled solely and exclusively by the only employer that's at issue here, Your Honors, the subsidiary corporation. I know you answered Judge Smith's question, that there wasn't any real distinction between what you're advocating and the economic realities. But I'm interested in your assessment of the Second Circuit's 1999 decision in Herman, where they referred to it as the economic realities test. We're looking for a test to establish here and to apply. And should it be called that? And, you know, you're saying there aren't any differences, but let me hear your reaction on Herman. I think that it is fair to say that the overall objective, what we're trying to determine is the economic reality. However, in this context, I think that the court's test needs to be grounded in 791.2C, which refers to the exercise of control. That is the test that is in the Secretary's regulation that's entitled the Chevron Deference. I think what the Second Circuit has done — The Second Circuit used Blanett, didn't it? The Second Circuit did, although there's a later Second Circuit decision, Zhang, where essentially what they do, and I don't disagree with this, is that the test has to be flexible depending upon the reality of the situation. So, for example, if you're talking about independent contractor employees or laborers who are supplied from one firm to another and everyone's disclaiming them, even Browning-Ferris, where you had the trucking brokers who were employing allegedly independent contractors, there are other facts that are clearly relevant. So the four Blanett factors in and of themselves may not be enough? That's correct, Your Honor. I think in the parent subsidiary context, a lot of the factors that are used by other courts are not relevant. You know, and to the extent they are, they all point in our favor, right? The parent doesn't supply the tools. Blanett is applicable where you're trying to decide which of multiple employers. Well, I would argue, Your Honor, that Browning-Ferris is applicable and that Blanett is consistent with that. And, again, in Blanett, you have control over the exact tasks and the hours in which they're performed as well as the authority to hire and fire these home workers. None of those factors are present here. Those things make a reality where the state welfare agency was employing those home workers. Here, you don't have that reality. Let me ask Judge Garth, do you have questions of Ms. Schwartz before we move to rebuttal? Only one question, and that has to do with the issue of whether the finding of fact that is adverse to your position is sufficient enough to send this to a jury or can it be decided as it was decided on summary judgment? Thank you, Your Honor. Our position is that even if that finding of fact was upheld by this Court, all of the other factors, as Judge Conte found, were so dispositively in our favor that no reasonable jury could find that a company that did not control those key aspects of employment could be deemed to be a joint employer, as is clear by comparison, for example, to the facts of Browning-Ferris. So our position is even though that particular aspect of the decision was in error, even if you disagreed with me, you should affirm the district court's decision because the district court's ultimate conclusion that all of those other factors so overwhelm it was clearly correct. Thank you. Thank you, Mr. Miller. Thank you, Your Honors. Mr. Miller, you may have rebuttal. Your Honor, with respect to the question whether the multi-factor test or a test should consider whether the same managers control the parent and the subsidiary, it absolutely should be a consideration by this Court. There is no greater control of the subsidiaries than having the COO, the chairman, and the CFO who control the parent company, who were the sole boards of directors on the boards for each of these subsidiaries and are the sole LLC managers. To the extent that defendant claims that it makes simply recommendations to the subsidiaries, a jury should hear, a trier of facts should hear, there are recommendations from these same three individuals ruling the parent who also rule and have the ultimate authority over all of the subsidiaries. Counsel pointed to, with respect to whether this is an issue of fact for the Court, defense counsel cited to the Alvarez-Perez case. Notably, the 11th Circuit in Alvarez-Perez, that case came to the 11th Circuit after a jury trial and a finding on the issue of whether or not the party was a joint employer for the FLSA. Similarly, in the Wertz v. Pure Ice, the 8th Circuit, that's another case that was relied upon by defendants in their briefing. Notably, there was a trial on the issue of whether the defendant was an employer. That issue went up on to appeal. Ultimately, the Court reversed the finding on appeal because the evidence was that the employer, quote, had nothing to do with the hiring of the employees or the fixing of their wages or hours. He was simply an investor. He was not involved with the business. Significantly, in that case, the Court stated, quote, if we had here a combination of stock ownership, management, direction, and the right to hire and fire employees, then a contrary conclusion would be well-supported. Your Honor, that's precisely what we have in this case. We have the stock ownership. We have the common management, as we've pointed out, the direction and the right to hire and fire employees. Your Honors, in the Business Practices Guide, the evidence in this case is that all defendant operating subsidiaries, however, followed the recommendations and guidelines created by the defendant in the Business Practices Guide, including the decision to classify assistant branch managers. Each employee in the evidence A-1197, plaintiff statement of fact, defendant requires the assistant managers to receive and read the Business Practices Guide and sign an acknowledgment of terms and conditions, which states that the employee, quote, I acknowledge that I have read and understand the practices, policies, and benefits addressed in this book, including the acknowledgment section, and agree to its terms and conditions. That Business Practices Guide specifically states that defendant, the parent company, quote, reserved the right at its sole discretion to make and implement decisions regarding an employee's position, compensation, and other terms and conditions of employment, including retention. Your Honor, there is no greater exercise of control over these plaintiffs than the question of fact found by the court with respect to their job description. That decides what they do on a daily basis. That is the issue here. What are they doing? What are their responsibilities? How are they paid? Defendant creates the compensation guide. The evidence on Appendix 1278-1280, it sets the salary ranges for all branch employees, including the assistant managers. So we've got the job description, what they do, how they are to be paid, and then the ultimate issue of how they're going to be classified. Defendant states that there was a meeting in 2005 and wants to downplay the significance of that. Your Honor, as the record indicates, during the 2005 meeting, defendant changed the parent company. Their term is they recommend it. They recommended that California change the classification of these assistant managers doing the very same job that they do in the rest of the country and recommended that the rest of the company, rest of the country, keep the classification as exempt. Present at that meeting, Your Honor, were in-house counsel. Your time is up, so you have to be quick about it. Your Honor, the court should consider the common management and control. The court must look to hear, with respect to the regulations, counsel points to Subsection 3 concerning sharing control, directly or indirectly. Also, Subsection 2, and it's an or, whether the employer is acting directly or indirectly in the interest of an employer. Based on the evidence in this case, a trier fact should determine, based on the totality of circumstances, with the strong evidence we have here, whether or not defendant was a joint employer. Does not need to be a sole employer, but a joint. Judge Garth, do you have any questions of counsel? I do not. Thank you. Thank you very much. Thank you, Your Honor. Thank you to all of counsel. The case was well argued. It's a very interesting matter. We'll take it under advisement.